**William Simpson EDWARDS, Petitioner,**

v.

**John AULT, Warden, Respondent.**

**No. C03–4073–MWB.**

United States District Court, N.D. Iowa, Western Division.

Oct. 20, 2004.

William Simpson Edwards, Anamosa, IA, pro se.

**AMENDED MEMORANDUM ORDER AND OPINION REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS AND ON THE MERITS**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND ....................................981

II.  LEGAL ANALYSIS ........................................983
   A.  Standard Of Review Of Magistrate's Report And Recommendation .........983
   B.  Exhaustion And Procedural Default ...................................984
   C.  Merits ..........................................987
      1.  Standards of review ...........................................988
         a.  General standards for § 2254 relief..............................988
         b.  Ineffective assistance of counsel claims ........................988
      2.  Magistrate's conclusions ..........................................990
      3.  Edwards's objection ..............................................991
      4.  Resolution .......................................................992
III.  CERTIFICATE OF APPEALABILITY .....................................993

IV.  CONCLUSION ................................................993

## I. INTRODUCTION AND BACKGROUND

In December 1989, petitioner William Simpson Edwards ("Edwards") was charged with the first-degree murder and third-degree sexual assault of a thirteen-year-old girl. As DNA evidence was a component of the State's case against Edwards,[1] in preparation for trial, Edwards procured expert witness Dr. Randell T. Libby ("Libby"). At one point Libby and Michael K. Williams ("Williams"), one of Edwards's trial attorneys, traveled to the Federal Bureau of Investigation ("FBI") in Maryland to review certain records. FBI agent John Stafford ("Stafford") remained in the room with Libby and Williams while the records were reviewed. At trial, Libby testified that DNA records maintained by the FBI excluded Edwards as the perpetrator. In rebuttal, the State called Stafford, who testified that while Williams and Libby were reviewing the records in his presence, Williams told Libby he must use the term "exclusion" somewhere in his testimony. Stafford's direct testimony prompted Gregory E. Jones ("Jones"), Edwards's other trial attorney, to request a recess during which he could determine whether Williams should withdraw and be called as a witness. Following the recess, Jones advised the court that Williams would not withdraw or testify, and Williams proceeded to cross-examine Staf-

---

1. Human seminal fluid recovered from the victim's body was compared to a blood sample given by Edwards.

ford. On cross, Williams attempted to elicit testimony from Stafford to the effect that he knew that the statement had been made as a joke. However, on redirect, Stafford testified that Williams's demeanor at the time he advised Libby to use the word "exclusion" did not appear to be jovial or humorous. On November 1, 1990, a jury found Edwards guilty of first-degree murder and third-degree sexual assault, and he was sentenced to consecutive terms of life imprisonment and ten years.

Following his conviction, Edwards filed a direct appeal in which he raised the following three issues:

(1) the district court abused its discretion in denying his motion for change of venue, (2) his constitutional right to a fair trial by a cross-section of the community was violated, and (3) he was denied effective assistance of trial counsel because of his attorney's failure to object to what he contends were inflammatory statements made by the county attorney in closing arguments.

*State v. Edwards*, No. 2–583 / 90–1913, at 2, 502 N.W.2d 175 (Iowa App. Dec. 29, 1992). The Iowa Court of Appeals rejected Edwards's contentions and affirmed his conviction on all grounds. *Id.* Edwards filed a request for reconsideration—which was denied. Procedendo issued March 12, 1993.

Edwards then proceeded to file a post-conviction relief ("PCR") application in Woodbury County, Iowa. In his application, Edwards raised several grounds for relief, but pursued only the issue of whether his trial counsel "was ineffective in discussing possible trial testimony of the defense expert in the presence of an FBI agent." *Edwards v. State*, No.1999–561 (9–822) / 99–158, at 3 (Iowa Ct.App. Feb 23., 2000) (*"PCR Appeal I"*). The State moved for summary judgment and for dismissal of the petition, claiming that Edwards had failed to show the was prej-

udiced from any alleged ineffective assistance of trial, or appellate, counsel. The District Court for Woodbury County granted the State's motion. *Id.* Edwards appealed this ruling to the Iowa Court of Appeals. The Iowa Court of Appeals, upon finding a genuine issue of material fact, reversed and remanded the matter for "the limited purpose of developing a further record as to whether original appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel claim and whether there was 'sufficient reason' to raise the ineffectiveness of trial counsel claim for the first time in a post-conviction proceeding." *Id.* at 8.

On remand, following the submission of further evidence, the District Court for Woodbury County dismissed Edwards's PCR application. *See Edwards v. State*, No. 01–1596, at 2 (Iowa Ct.App. Jan. 29, 2003) (*"PCR Appeal II"*). Edwards again appealed. The Iowa Court of Appeals found that Edwards's trial counsel's actions had raised a potential conflict of interest, but that trial counsel's mistake in judgment did not have an adverse effect on trial counsel's performance at trial and did not affect the fundamental fairness of the trial. *Id.* Having found that trial counsel's performance was not ineffective, appellate counsel's failure to raise the issue of trial counsel's ineffectiveness likewise was not erroneous. The Iowa Court of Appeals ultimately affirmed the denial of PCR relief. *Id.* Edwards's further requests for review were denied, and procedendo issued April 23, 2003.

On August 1, 2003, Edwards filed a motion to proceed *in forma pauperis* and a proposed writ of *habeas corpus* under 28 U.S.C. § 2254 with this court. (Doc. No. 1). Edwards's application to proceed *in forma pauperis* was granted, and his habeas petition was officially filed September 3, 2003. (Doc. No. 4).

On October 6, 2003, Respondent John Ault ("Ault") filed an Answer (Doc. No. 5) and a Motion to Dismiss "Mixed" Petition. (Doc. No. 7). On October 14, 2003, Edwards filed a *pro se* resistance, entitled Motion To Resist (Doc. No. 9), together with a motion for appointment of counsel. Edwards filed a *pro se* "submission of state court documents" on October 17, 2003—to which he attached copies of two briefs that were filed in his action for postconviction relief in the Iowa District Court in and for Woodbury County. (Doc. No. 10). Edwards's motion for appointment of counsel was granted on October 23, 2003, and Jeffrey M. Lipman ("Lipman") was appointed to represent Edwards in this action. (Doc. No. 11). When Edwards and Lipman failed to see eye to eye on how this action should proceed, Edwards filed a motion to withdraw Lipman from the case and proceed *pro se.* (Doc. No. 20). Lipman concurred with Edwards's assertion that they had irreconcilable differences of opinion regarding the case. (Doc. No. 24). On January 28, 2004, following a telephonic hearing, the court granted Edwards's motion and withdrew Lipman from the case. (Doc. No. 23). Also at this time, the court granted Edwards an extension of time to file a supplemental resistance to Ault's motion to dismiss. (Doc. No. 23). Edwards filed his supplemental brief in resistance to Ault's motion to dismiss on February 9, 2004. (Doc. No. 26).

The motion to dismiss was referred to United States Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(B). On July 12, 2004, Judge Zoss filed his Report and Recommendation, which recommended that Ault's motion to dismiss be denied and that Edwards's petition for writ of *habeas corpus* be denied on the merits. (Doc. No. 30). On July 26, 2004, Edwards filed his objections to the Report and Recommendation. (Doc. No. 31). The matter is now fully submitted and the court will now undertake the necessary review of Judge Zoss's Report and Recommendation.

## II. LEGAL ANALYSIS

### A. Standard Of Review Of Magistrate's Report And Recommendation

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136

L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995) (also citing *Belk*). Because objections have been filed in this case to Judge Zoss's legal conclusions, the court must conduct a *de novo* review. With these standards in mind the court will now turn to Edwards's objections to Judge Zoss's Report and Recommendation.

### B. Exhaustion And Procedural Default

In his petition, Edwards assets the following four grounds for relief (quoted from the petition):

A. Ground one: Denial of effective assistance of counsel trial/appellate.... Trial counsel coerced testimony from a defense expert witness[,][w]hich denied defendant a fair trial consistent to [sic] the adversarial process.

B. Ground two: Denial of right of appeal.... The state presented testimony given by an FBI speacil [sic] agent John Stafford which accuses trial counsel of coerced testimony for money. Appellate counsel was fully aware of this information. However, has no recollection nor idea why he did not raise the issue during his representation of the defendant. Denying defendant effective assistance of counsel trial/appellate.

C. Ground three: Trial counsel prejudiced defendant's right to a fair trail [sic] by creating a conflict of interest.... Trial counsel created a conflict between himself/client by personal actions of instructing a witness how to testify. These actions discredited the attorney[']s creditable [sic] to represent his client. Trial counsel chose not to withdraw as counsel when it appeared to be in the best interest of the client.

D. Ground four: Petitioner was denied his right to due process.... The state's deliberate misrepresentation of the evidence. It argues that trial counsel's actions were normal practice. However for the state to argue this as fact it creat[e]s misconduct on its part by presenting FBI special agent John Stafford's testimony to the jury and court as truthful. If trial counsel actions were normal/Stafford was perjuried [sic].

Petition for Writ of Habeas Corpus, Doc. No. 4, at 5–6. In his motion to dismiss, Ault asserted that the grounds contained in paragraphs A, B and D were never raised at any proceeding prior to the petition for habeas relief—as such, Edwards's petition raised both exhausted and unexhausted claims, and should be dismissed. Predictably, Edwards contends that he raised all four grounds for relief in his *pro se* briefs in the PCR action.

In reviewing the record, Judge Zoss found that Edwards arguably raised grounds A, B and C in prior state court proceedings, but that ground D was both unexhausted and procedurally defaulted:

In both the present case and the PCR action, Edwards failed to state his assertions of error as clearly as a trained attorney might have done. For example, in ground B, above, Edwards frames the issue as "Denial of right of appeal," but it is clear from his explanatory statement that he is raising the issue of whether his appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness. This issue was raised in the PCR action.

Similarly, in ground A, Edwards raises the issue of his trial counsel's ineffectiveness, an issue he argued in the courts below, although once again with a lack of clarity.

In ground C, Edwards raises the issue of trial counsel's ineffectiveness in creating a conflict of interest, an issue directly addressed by the Iowa Court of Appeals in the second PCR appeal.

The court finds that although his assertions of error are less than clear, Edwards at least arguably raised grounds A, B and C in the Iowa courts, giving those courts an opportunity to rule on his claims.

However, the same cannot be said for ground D. Edwards attempted to raise some type of due process argument concerning prosecutorial misconduct in the PCR action, in his "Appendix Brief for the Evidentiary Hearing Schedual [sic] for July 24th, 2001, at 9:00 AM." (Doc. No. 10, Attachment, at pp. 3–4) However, his argument in the PCR action was not the same as the ground for relief he raises here. Instead, in the PCR action, Edwards argued the State advanced different facts and legal theories on appeal than had been argued at trial; the State offered perjured testimony of Agent Stafford at trial; and the State acted in bad faith in offering Stafford's testimony. Further, he claimed that at the PCR level, the State somehow was trying to recharacterize Stafford's testimony, which was "intended to prejudice and deny petitioner's appeal from conviction." (Id., p. 4) Whether or not Edwards intended to raise the same grounds in the present action, the court finds he failed to do so, and the assertion of error in ground D was never properly presented to the Iowa courts for resolution.

The United States Supreme Court, in *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), held:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an

opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.

*Id.,* 526 U.S. at 842–43, 119 S.Ct. at 1731 (citations omitted). Further, subsection 2254(c), 28 U.S.C. § 2254(c), provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Thus, the court must determine whether Edwards can still raise the issue presented in ground D to the state courts of Iowa "by any available procedure." *See O'Sullivan,* 526 U.S. at 847, 119 S.Ct. at 1734. The court finds he cannot. The statute of limitations has run for Edwards to raise the issue in a PCR action. *See* Iowa Code § 822.3 (PCR application must be filed within three years from date procedendo issues following direct appeal). The basis for ground D has been known to Edwards since the time of trial, with the result that the exception under Iowa law that would allow him to raise the issue out of time is not applicable. *See id.* (exception for "a ground of fact or law that could not have been raised within the applicable time period"). As a result, ground D is not only unexhausted, it also has been procedurally defaulted. Edwards has not alleged cause and prejudice to excuse the procedural default, and his petition therefore should be denied as to ground D.

Report and Recommendation, Doc. No. 30, at 5–7 (footnotes omitted).

Edwards objects to Judge Zoss's finding that ground D was both unexhausted and procedurally defaulted. Specifically, Edwards appears to read Judge Zoss's Report and Recommendation as dismissing

ground D based on Edwards's failure to artfully articulate his claim for relief:

> The court denied Edwards' right to due process concerning ground [D] based on Edwards' failure to state his assertion of errors as clearly as a trained attorney might have done. Arguably agreeing Edwards did in fact raise issue [D] in the state courts. The laws doese (sic) not give the district court the right to not rule on an issue presented to the court then later argue the issue was not raised. . . .

Petitioner's Objections to Magistrate's Report and Recommendation Concerning His Writ of Habeas Corpus, Doc. No. 31, at 6 ("Objections"). Edwards goes further, claiming that the "district, appellate and now federal courts were/are informed of the acts of misrepresentation of court documents" and that it is "more important that the court rectify [the deliberate misrepresentation of evidence] in order to assure the integrity of the judiciary than how clearly Edwards formed [his] argument." *Id.* at 7.

Judging from the context of Edwards's objection, it seems as though Edwards misunderstood the grounds upon which Judge Zoss recommended dismissal of ground D. Though Judge Zoss did note that Edwards did not articulate his grounds for relief as a trained legal professional would have, this observation played no role in the legal analysis of Edwards's claims for relief. In fact, it appears as though Judge Zoss rightfully recognized the difficulty facing a *pro se* habeas petitioner, and gave Edwards's petition the most liberal reading possible—which is evidenced by the fact that Judge Zoss did not recommend dismissal of three of the four grounds claimed. Further, Judge Zoss did not find ground D of the petition unexhausted and procedurally defaulted

based on the manner in which Edwards verbalized the claim—rather, Judge Zoss found that ground D was unexhausted as it had not been properly raised in any prior state court proceeding, and that it was procedurally defaulted because the appropriate statute of limitations precluded Edwards from returning to the state courts to properly exhaust the claim. *See* Report and Recommendation at 6–7.

■ On review, the court agrees with Judge Zoss's conclusion that Edwards failed to raise ground D in any prior proceeding. On direct appeal, Edwards raised three grounds for error: (1) the district court abused its discretion in denying his motion for change of venue; (2) his constitutional right to a fair trial by a cross-section of the community was violated; and (3) that trial counsel was ineffective for failing to object to inflammatory and vicious remarks made by the State during closing arguments.[2] *See State v. Edwards*, No. 9 2–583 / 90–1013, at 2 (Iowa Ct.App. Dec. 29, 1992). Appellant's Reply Brief and Argument at 1. Edwards went on to pursue only the issue of ineffective assistance of counsel during post-conviction relief proceedings—specifically, that trial counsel was ineffective in discussing possible trial testimony with a defense expert in front of an FBI agent, and that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. *PCR Appeal I* at 3. In ground D of his petition for writ of habeas corpus, Edwards attempts to assert that he was denied due process when the state deliberately misrepresented evidence, and engaged in prosecutorial misconduct, by suborning perjury of FBI agent Stafford. *See* Petition for Writ of Habeas Corpus, Doc. No. 4, at 6.

---

**2.** Edwards's brief on appeal refers to the State's allegedly inflammatory remarks during closing arguments as "prosecutorial misconduct."

The court has reviewed the state court documents, and did find a *pro se* filing by Edwards in which he stated:

trial records clearly show the respondent (Thomas Mullin) the original prosecutor of this case, first had prior knowledge of the statements made be defense counsel Williams to Randell Libby before Libby testified, but allowed the testimony he later argued was perjurus (sic) to be given in open court without informing the court of its orgin (sic).

*Edwards v. State*, Case No. PCCV111832c, Applicant's Response Brief at 2. Taken in context of the entire brief, it appears as though Edwards argues that the State, as the only party having knowledge of the fact that Stafford overheard Williams's statement to Dr. Libby, should have informed the court of this knowledge before Dr. Libby was called as a witness. In contrast, in ground D of his habeas petition, Edwards asserts that the State engaged in prosecutorial misconduct by suborning perjury of agent Stafford. This claim has clearly never been before any Iowa state court—and, is counteracted by Edwards's own statements in another of his PCR briefs in which Edwards concedes that Stafford's testimony was wholly consistent with Dr. Libby's: "[t]he testimony given by Randell Libby was totally consistent to what agent Stafford testified he heard Mr. Williams instructing and directing Libby to say." *Edwards v. State*, Case No. PCCV111832c, Petitioner's Appendix Brief Pursuant to Post–Conviction Relief Hearing of July 24, 2001 at 8. Ground D has *clearly* never been properly before any Iowa state court, and is unexhausted.

■ Further, the court also agrees with Judge Zoss that pursuant to Iowa law the time for returning to state court to pursue the allegations in ground D has lapsed. IOWA CODE § 822.3 (noting that applications "must be filed within three years from the date the writ of procedendo is issued."), as the facts surrounding this allegation were known to Edwards by the time his conviction was final. *Nims v. Ault*, 251 F.3d 698, 701 (8th Cir.2001) (recognizing Iowa law requiring that "post-conviction claims be brought within three years from the date the conviction or decision is final, unless there is a ground of fact or law which could not have been raised within the applicable time period."). Clearly, ground D of the petition is both unexhausted and procedurally defaulted, and Edwards's objection must be overruled. As grounds A, B and C are exhausted and ripe for review on the merits, and as dismissal of the petition would serve no purpose as ground D is procedurally defaulted, the court finds that Ault's motion to dismiss the petition must be denied, and, like Judge Zoss, the court will proceed to consider the merits of the exhausted claims. *See Harris v. Champion*, 48 F.3d 1127, 1131 n. 3 (10th Cir.1995) (noting that habeas petitions containing exhausted and unexhausted claims are not subject to mandatory dismissal where the unexhausted claims are procedurally defaulted, and that the district court retains the authority to determine the merits of the exhausted claims); *Hall v. Iowa*, 705 F.2d 283, 286–87 (8th Cir.1983) (recognizing that where there is a mixture of exhausted and unexhausted claims the district court can either dismiss the petition or proceed to pass on the merits of only the exhausted claims).

### C. Merits

The court now turns to review of Judge Zoss's Report and Recommendation, and Edwards's objections thereto, as to the merits of grounds A, B and C of his habeas petition. The court concurs with Judge Zoss's classification of grounds A, B and C as grounded in effectiveness of both trial counsel and appellate counsel—arising from the impeachment of Dr. Libby by

Stafford.[3] Therefore, the court will analyze grounds A, B and C under the standards applicable to ineffective assistance of counsel claims.

### 1. Standards of review

#### a. General standards for § 2254 relief

Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 governs Edwards's petition.

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor,* 529 U.S. 362, 404–05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)). Regarding the first category, a state court decision is "contrary to"[4] Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405, 120 S.Ct. 1495. An "unreasonable application" of federal law by a state court, as enunciated in the second category, can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495. It is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable. *Id.* at 411, 120 S.Ct. 1495; *see Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) ("an unreasonable application is different from an incorrect one.").

Third, and finally, where neither the first or second categories of section 2254(d)(1) apply, section 2254(d)(2) allows a writ of habeas corpus to issue if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2); *see cf. Sexton v. Kemna,* 278 F.3d 808, 811 (8th Cir.), *cert. denied,* 537 U.S. 886, 123 S.Ct. 129, 154 L.Ed.2d 145 (2002).

#### b. Ineffective assistance of counsel claims

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In his Report and

---

**3.** Specifically, Edwards contends that trial counsel was ineffective for creating a conflict of interest in making statements to Dr. Libby in the presence of agent Stafford, and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in creating the conflict of interest.

**4.** With regard to the first category, the Supreme Court has elaborated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389.

Recommendation, Judge Zoss outlined the two-prong test employed in determining the effectiveness of counsel, which was enunciated by the United States Supreme Court in *Strickland.* To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "the deficient performance prejudiced the defense." *Id.* at 687, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Furnish v. United States of America,* 252 F.3d 950, 951 (8th Cir.2001) (stating that the two-prong test set forth in Strickland requires a showing that (1) counsel was constitutionally deficient in his or her performance and (2) the deficiency materially and adversely prejudiced the outcome of the case); *Garrett v. Dormire,* 237 F.3d 946, 950 (8th Cir.2001) (same). Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Indeed, "counsel must exercise reasonable diligence to produce exculpatory evidence[,] and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). However, there is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. *Id.* at 689, 104 S.Ct. 2052, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Collins v. Dormire,* 240 F.3d 724, 727 (8th Cir.2001) (in determining whether counsel's performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .") (citing *Strickland* ). With respect to the "strong presumption" afforded to counsel's performance, the Supreme Court specifically stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

In most cases, to demonstrate that counsel's error was prejudicial, thereby satisfying the second prong of the *Strickland* test, a habeas petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* However, where a petitioner can prove by a preponderance of the evidence that an actual conflict of interest existed, prejudice is presumed. *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 64 L.Ed.2d 333, 346–48 (1980).[5] Though the *mere pos-*

---

**5.** The rule in *Cuyler* applies only where the      defendant did not object to a perceived con-

*sibility* of a conflict is "sufficient to impugn a criminal conviction," *id.* at 350, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333, if the petitioner shows that "a conflict of interest actually affected the adequacy of his representation" then prejudice is presumed and only the issue of whether counsel's performance fell below the normal range of competency is examined. *Id.* at 349–50, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (citing *Holloway v. Arkansas,* 435 U.S. 475, 487–91, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978); *Glasser v. United States,* 315 U.S. 60, 72–75, 62 S.Ct. 457, 465–67, 86 L.Ed. 680 (1942)). An "actual conflict" analysis "embraces both the cause and effect elements of *Cuyler,*" *Mickens v. Taylor,* 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), therefore "an 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Covey v. United States,* 377 F.3d 903, 908 n. 3 (8th Cir.2004) (citing *Mickens,* 535 U.S. at 172 n. 5, 122 S.Ct. 1237).

With these standards in mind, the court turns to a discussion of Judge Zoss's analysis, followed by Edwards's objection and finally to the court's disposition.

### 2. *Magistrate's conclusions*

In addressing the merits of Edwards's petition, Judge Zoss began by noting that the Iowa Court of Appeals in the second post-conviction relief action made the following factual findings: (1) Williams's statement to Dr. Libby in the presence of FBI agent Stafford did not amount to a

breach of an essential duty; (2) Williams did not ask Dr. Libby to lie; (3) Williams did not divulge privileged information in the course of his discussion with Dr. Libby; and (4) Williams's discussion with Dr. Libby was "at worst, a mistake in judgment." *See* Report and Recommendation at 12 (citing *PCR Appeal II* at 3–4). As the presumption of correctness accorded to these findings had not been rebutted by clear and convincing evidence, Judge Zoss used these findings as a backdrop for his analysis on the merits of Edwards's petition. *Cf. Owens v. Dormire,* 198 F.3d 679, 682 (8th Cir.1999) ("State court findings of fact are entitled to a presumption of correctness.") (citing 28 U.S.C. § 2254(e)(1) (Supp. III 1997)); *Perry v. Kemna,* 356 F.3d 880, 883 (8th Cir.2004) (noting that the "presumption of correctness applies to factual determinations made by state courts whether the court be a trial court or an appellate court.") (quoting *King v. Bowersox,* 291 F.3d 539, 540 (8th Cir.2002)).

Judge Zoss then turned to the conclusion of the Iowa Court of Appeals that Williams's statement to Dr. Libby was "a mistake of judgment that created a potential conflict of interest." Report and Recommendation at 14 (quoting *PCR Appeal II* at 6). Judge Zoss agreed with the Iowa Court of Appeals, holding:

> . . . . The conflict created by counsel's conversation with Libby in Stafford's presence was not the type of conflict of interest contemplated by the Supreme Court in *Cuyler,* and does not rise to the

---

flict of interest at or before trial. *See Atley v. Ault,* 191 F.3d 865, 869 (8th Cir.1999). Where a defendant objects to a perceived conflict at trial, pursuant to *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) the trial court is obligated to determine whether an actual conflict exists. Failure of the trial court "to determine whether the defendant is receiving assistance of counsel unburdened by a conflict of inter-

est" results in presumed prejudice and mandatory reversal of the conviction. *Id.* at 870. "Because [Edwards] did not lodge an objection to the conflict at trial and because he does not allege the type of conflict that would obligate the trial judge to initiate an inquiry into the conflict, *Culyer* requires that [Edwards] demonstrate that" the conflict adversely affected his lawyer's performance." *Covey,* 377 F.3d at 908.

level that would require a presumption of prejudice. The Supreme Court has explained it is only "where assistance of counsel has been denied entirely or during a critical stage of the proceeding," or "when the defendant's attorney actively represented conflicting interests," that the circumstances will rise to such a magnitude that the court may "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 1241, 152 L.Ed.2d 291 (2002) (citing *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). The court finds Edwards has failed to show he was denied counsel during any stage of the proceedings, or that his trial counsel was actively representing conflicting interests. Despite counsel's error, the court finds he was, at all times, representing Edwards's interests and no others.

*Id.* at 15–16. Having found no actual conflict of interest to exist, prejudice was no presumed.

Judge Zoss noted that absent a presumption of prejudice, Edwards had to satisfy both the "performance" and "prejudice" prongs of *Strickland,* and that the court was free to analyze the two prongs in whichever order facilitated the easiest resolution of the issue. Judge Zoss turned to an analysis of the prejudice prong and using the traditional *Strickland* prejudice analysis, he found that Edwards could not meet the prejudice prong of the analysis:

> [Despite] Edwards's protestations to the contrary, the jury was faced with ample evidence of his guilt, even ignoring the disputed DNA evidence. It was undisputed that Edwards and his girlfriend had been staying at the victim's home. The jury heard evidence that Edwards had confessed to the crime to two other inmates at the Woodbury County Jail. (*See* Trial Tr. 10–23–90, at 79–81; Trial Tr. 10–25–90, at 20, 26–28, 30–32) He described picking the victim up from school, taking her home and having sex with her, and then hitting her on the head with a stick when she threatened to report the incident. (*Id.*) Two other witnesses had seen a young white female get into a tan car matching the description of Edwards's car, with a black male driver. (*See* Trial Tr. 10–23–90, at 108–09, 111–12)
>
> Based on the evidence, even if Stafford had not been allowed to testify, there is not a reasonable probability that Edwards would have been acquitted. Thus, Edwards cannot meet the prejudice prong of the *Strickland* analysis
> . . . .

*Id.* at 16. As Edwards could not establish *Strickland* prejudice, Judge Zoss determined that Edwards could not prevail on his ineffective assistance of counsel claim. Further, Judge Zoss found that because trial counsel was not ineffective, it could not have been error for Edwards's appellate counsel to fail to raise the issue of trial counsel's ineffectiveness on appeal. Accordingly, Judge Zoss recommended that Edwards's petition for a writ of habeas corpus be denied on the merits. *Id.* at 17.

### 3. Edwards's objection

It appears as though Edwards does not take issue with the legal standards used by Judge Zoss in analyzing his petition—specifically, the use of the standards enunciated in *Strickland* and *Cuyler.* *See* Objections at 8 ("Edwards agree (sic) with the court's findings in considering his appeal useing (sic) Strickland and Cuyler and State v. Vanover."). So, the legal standards utilized by Judge Zoss are not in issue. Edwards lodges only the following as an "objection" to Judge Zoss's analysis of the merits of his petition:

> TRIAL COURT: *court finds that the anticipated testimony of* [agent Stafford]

is appropriate rebuttal testimony to contradict a fact that has been testified to by a defense witness and that is whether the defendant's witness was in fact instructed by counsel to testify in a certain way.

THE STATE: Libby (defense expert witness) was asked by me (county attorney) whether defense counsel in this case told him what his testimony should be. I asked Dr. Libby on cross-examination, "so they didn't tell you what to say to earn your money in this case; is that right?"

This fact remains, to exclude the actions of Edwards's attorney concerning the expert's testimony. The jury hears that " the DNA evidence in this case tends to exclude Edwards as the perpetrator". The assumptions to believe any jury would convict after hearing that testimony is just that, an assumption not fact. . . . However, ethical responsibility of attorneys and the law address Edwards' claims concerning his attorneys action clearly.

*Id.* From this, it appears as though the gravamen of Edwards's objection centers around Judge Zoss's treatment of the conflict of interest issue—specifically, that Edwards asserts that Judge Zoss's finding that trial counsel's conduct did not create an actual conflict of interest is erroneous. The court will analyze Edwards's objection from this perspective.

### 4. Resolution

■ An "actual conflict" under *Cuyler* is "a conflict of interest that adversely affects counsel's performance." *Covey,* 377 F.3d at 908 n. 3. The Eighth Circuit recently discussed the type of showing necessary to demonstrate an "actual conflict":

"Adverse effect" is not the equivalent of prejudice. [*Cuyler,* 446 U.S.] at 349–50, 100 S.Ct. 1708. To demonstrate adverse effect, [the petitioner] must identify "some actual and demonstrable adverse

effect on the case, not merely an abstract or theoretical one." *United States v. Flynn,* 87 F.3d 996, 1001 (8th Cir.1996). "Effect on representation mean[s] that the conflict caused the attorney's choice, not that the choice was prejudicial in any other way." *McFarland v. Yukins,* 356 F.3d 688, 705 (6th Cir.2004).

*Id.* at 908. Therefore, the question in this case is whether Edwards's counsel's statements to DNA expert Libby, in the presence of FBI agent Stafford, created an "actual conflict" that adversely affected counsel's performance. *See id.* at 908 n. 3.

The court must agree with the Iowa Court of Appeals, and Judge Zoss, that while trial counsel's actions were undoubtedly a mistake in judgment, and created a *potential* conflict of interest, they did not rise to the level of an "actual conflict" that adversely affected trial counsel's performance. Though trial counsel made a mistake in judgment that created grounds for impeachment and placed trial counsel's credibility at issue, the court cannot say that trial counsel *actively* represented an interest adverse to Edwards—or, more importantly, that trial counsel's mistake had any adverse effect on his representation of Edwards. As the Iowa Court of Appeals noted:

Having created fodder for impeachment, counsel attempted to minimize its impact. While in hindsight, we can say his effort was unsuccessful, the fundamental fairness of the proceeding was not called into question.

*PCR Appeal II* at 6. The court finds Edwards's arguments and objection to the contrary unpersuasive, and agrees with Judge Zoss that "Edwards failed to show he was denied counsel during any stage of the proceedings, or that his trial counsel was actively representing conflicting interests." Report and Recommendation at 15.

Therefore, as Edwards has failed to show trial counsel offered assistance burdened by a conflict of interest as contemplated by *Cuyler*, the presumption of prejudice does not apply in this matter.

█ Therefore, in order to establish ineffective assistance of trial and/or appellate counsel, Edwards must satisfy both prongs of the *Strickland* analysis. For *Strickland* prejudice to be established, Edwards is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. Like Judge Zoss, the court finds that even setting aside the DNA evidence, there was ample evidence presented at trial from which a jury could have found Edwards guilty. In light of this additional evidence, even if Stafford had never testified, there is not a reasonable probability that Edwards would have been acquitted. Clearly, Edwards has failed to meet the threshold for establishing *Strickland* prejudice, and hence his ineffective assistance of trial counsel claim must fail. Likewise, as Edwards cannot show that trial counsel was ineffective, no ineffective assistance of appellate counsel claim lies of appellate counsel's failure to raise trial counsel's ineffectiveness on appeal.

In summary, the court overrules Edwards's objection and finds that he has failed to show that trial counsel's conduct rose to the level of creating an "actual conflict" under *Cuyler*. Further, the court finds that Edwards has failed to establish that trial counsel's conduct amounted to *Strickland* prejudice—which extinguishes his ineffective assistance of counsel claims as to the actions of both his trial and appellate counsel.

## III. CERTIFICATE OF APPEALABILITY

█ Edwards must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability on these issues. *See Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir.), *cert denied*, 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 184 (2000); *Mills v. Norris*, 187 F.3d 881, 882 n. 1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir.), *cert. denied*, 525 U.S. 1007, 119 S.Ct. 524, 142 L.Ed.2d 435 (1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir.1998), *cert. denied*, 525 U.S. 1166, 119 S.Ct. 1083, 143 L.Ed.2d 85 (1999); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997), *cert. denied*, 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Edwards has failed to make such a substantial showing. Therefore, with respect to these claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3).

## IV. CONCLUSION

Edwards's objections to Judge Zoss's Report and Recommendation are overruled. The court **accepts** Judge Zoss's Report and Recommendation. Accordingly, Ault's motion to dismiss is **denied**, ground D is dismissed as both **unexhausted and procedurally defaulted**, and Edwards's petition for writ of habeas corpus is dismissed on the merits. A certificate of appealability **will not issue** as to these claims.

**IT IS SO ORDERED.**